1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | ) | No. 10-6144M |
|---|---|---|
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Ricardo Infante, | ) | |
| Defendant. | ) | |

*Whenever a man does a thoroughly stupid thing,
it is always from the noblest motives.*[1]

This matter is before the Court on Defendant's Request for Dismissal of Complaint, Discharge of Defendant pursuant to Fed.R.Crim.P. 5.1(f). (docket # 22) Defendant argues that the Government has not established probable cause that Defendant committed the crime of Interstate Stalking in violation of 18 U.S.C. § 2261A. The Court has reviewed the parties' briefing on the issue. The Court finds insufficient evidence was presented at the March 12, 2010 preliminary hearing to hold all Defendant to answer to the Western District of New York for trial on the crime charged.

**I. Background**

The Government alleges that on or about February 4 through February 10,

---

[1] Irish Poet, Novelist and Critic Oscar Wilde, 1854-1900

2010, Defendant committed the crime of Interstate Stalking in violation of 18 U.S.C. § 2261A. (docket # 1, Criminal Complaint, at 2-10) The probable cause affidavit in support of the Complaint describes the events giving rise to the charged offense. In June 2009, L.B.[2], the alleged victim, met Defendant at Arizona State University. They attended the same course, which included a three week trip to Russia which they both attended. L.B. and Defendant had coffee one time, and L.B. determined she was not interested in him. L.B. returned home to New Jersey after the conclusion of the course at A.S.U.

While in New Jersey, on August 28, 2009, Defendant contacted L.B. via her internet Facebook account. In September 2009, L.B. returned to the University of Rochester, located in Rochester, New York. On February 6, 2010, Defendant sent L.B. an e-mail and several others between February 6 and 8, 2010. In one e-mail, Defendant stated that he had a "powerful longing" for L.B. (docket # 1 at 5) He also stated, in a text message, that he wanted L.B.'s forgiveness for having been "a jerk, a masochist and even a criminal all this time. . . ." (*Id*. at 5-6)

On February 8, 2010, L.B. received two phone messages from Defendant in which he said he was in Rochester and wanted to see her. On February 8, 2010, L.B. received an e-mail from the University of Rochester Common Connection, advising her that a florist had flowers for her to pick up. L.B. called the florist and learned that the flowers were from Defendant. (*Id*. at 6) On February 11, 2010, the flower shop advised Investigator Lafferty that Defendant personally came into the shop on February 5, 2010 and ordered the flowers for L.B. (*Id*.)

On February 10, 2010, Investigator Lafferty spoke with Professor Laura Givens who stated that an individual sat in her Russian class on February 8, 2010. After class, that individual asked about an individual who attended her class, trying to obtain information about L.B. (*Id*. at 7)

---

[2] These initials are used to protect the victim's identity.

- 2 -

On February 9, 2010, the Captain L.S. Strem, Rochester Police Department, spoke with the Defendant by telephone. Defendant stated that he flew to Rochester on February 4, 2010 and went to the University of Rochester's campus trying to find L.B. Defendant explained how he tried to contact L.B. through e-mails, phone messages, through Professor Laura Givens, and through flowers and gifts. (*Id.* at 8) He indicated that he saw L.B. during his weekend in Rochester, including one occasion in the library. He stated that he did not get any closer to her than 10 to 15 feet, and did not want to make eye contact with her. (*Id.* at 8) L.B. told the police that she suffered substantial emotional distress as a result of Defendant traveling to Rochester and trying to contact her. (*Id.*)

After Defendant's arrest in the Phoenix area on March 5, 2010 on the Western District of New York's criminal warrant, a preliminary hearing was held before the undersigned Magistrate Judge on March 12, 2010. The matter was taken under advisement pending submission of the parties' post-hearing memoranda.

## II. Preliminary Hearing

Federal Rule of Criminal Procedure 5.1 addresses preliminary hearings. Rule 5.1(e), FED.R.CRIM.P., provides that "[i]f the magistrate judge finds probable cause to believe an offense has been committed and the defendant committed it, the magistrate judge must promptly require the defendant to appear for further proceedings." Rule 5.1 (e). However, Federal Rule of Criminal Procedure 5.1(f) provides that:

> [i]f the magistrate judge finds no probable cause to believe an offense has been committed or the defendant committed it, the magistrate judge must dismiss the complaint and discharge the defendant. A discharge does not preclude the government from later prosecuting the defendant for the same offense.

Fed.R.Crim.P. 5.1(f); 18 U.S.C. § 3060. "A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." *Barber v. Page*, 390 U.S. 719, 725 (1968), *overruled on other grounds by*

*Crawford v. Washington*, 541 U.S. 36 (2004). Neither the criminal procedural rules nor criminal code, however, define "probable cause." Case law establishes, however, that in the context of preliminary hearings,[3] "[p]robable cause signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Coleman v. Burnett*, 477 F.2d 1187, 1202 (C.A.D.C. 1973) (citations omitted); *In re Szepietowski*, 2009 WL 187568, * 4 (E.D.N.Y. 2009) (In an extradition case, "[p]robable cause has been defined as the level of evidence 'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'") (citations omitted).

The United States Supreme Court has noted that "[t]he long-prevailing standard of probable cause protects 'citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime,' while giving 'fair leeway for enforcing the law in the community's protection.'" *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (quoting *Brinegar v. United States*, 338 U.S. 160 (1949)). "[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Id*. at 370-371 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

Defendant contends that insufficient evidence has been presented to establish the required element of "intent to harass." Therefore, the Defendant argues, the Government has failed to establish that probable cause exists for the charged offense and that the charged offense should be dismissed.

**A. Interstate Stalking, 18 U.S.C. § 18 U.S.C. § 2261A**

Title 18 U.S.C. § 2261A provides, in relevant part, that:

---

[3] Similarly, in the Fourth Amendment context, "[p]robable cause exists where the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Safford Unified School Dist. No. 1 v. Redding*, ___ U.S. ___, 129 S.Ct. 2633, 2639 (June 25, 2009)

- 4 -

> Whoever -
>
> (1) travels in interstate . . . commerce . . . with the intent to kill, injure, harass, or intimidate or to place under surveillance with intent to kill, injure, harass or intimidate another person, and in the course of, or as a result of, such travel places that person in reasonable fear of the death, or serious bodily injury to, or causes substantial emotional distress to that person, a member of the immediate family . . . of that person, or the spouse or intimate partner of that person . . . shall be punished as provided in section 2261(b).

18 U.S.C. § 2261A.

Section 2261A has three elements: (1) interstate travel occurred; (2) a defendant's intent was to injure or harass another person; and (3) the person defendant intended to harass or injure was placed in reasonable fear of death or serious bodily injury to herself or a member of her family as a result of that travel. *United States v. Al-Zubaidy*, 283 F.2d 804, 808 (6th Cir. 2002). Defendant does not dispute the first and third elements. Rather, Defendant argues that the Government has not established probable cause that his interstate travel was done with the "intent to harass" or with the "intent to place under surveillance with the intent to harass," the alleged victim, L.B. (docket # 22)

### 1. *Mens Rea* of Intent to Harass

The Interstate Stalking Statute does not clearly articulate the state of mind required to satisfy the "intent to harass" element of the offense. Defendant argues that the legislative history indicates that the Government "must establish that the defendant's state of mind was of a purposeful intent to create a severe adverse reaction in the victim." (*Id*. at 4) Relying on *Washington v. Davis*, 426 U.S. 229, 252 (1976), the Government argues that the general rule in criminal cases is that intent will be inferred from objective evidence of what actually happened rather than evidence describing the subjective state of mind of the actor. (docket # 26 at 3) The Government further argues that circumstantial evidence establishes that Defendant's purpose for traveling to Rochester was to harass L.B. (*Id*. at 4)

As Defendant argues in his Reply, *Washington* is inapplicable to this

criminal case. (docket # 27, at 3 n. 1) *Washington* is a civil case in which the Supreme Court reversed the appellate court's summary judgment where police recruits challenged the validity of a qualifying test for placement in certain positions within the city's police department. 426 U.S. 252. As such, *Washington* is not helpful to the Court's determination of the state of mind required to satisfy the "intent-to-harass" element of the federal Interstate Stalking Statute.

To determine whether the "intent to harass" element of § 2261A requires proof that Defendant had a subjective purpose to harass another person, as Defendant argues, the Court will consider relevant case law cited in the parties' briefs.

In *United States v. Jordan*, 591 F.Supp.2d 686 (S.D.N.Y. 2008), the defendant was convicted of Interstate Stalking, in violation of 18 U.S.C. § 2261A(2). In denying the defendant's motion for a new trial, the district court discussed the jury instructions which directed the jury to consider:

> whether the defendant did [engage in a course of conduct that caused the victim substantial emotional distress] *knowingly and with the specific intention* either (1) to injure, harass, intimidate or cause substantial emotional distress [to the victim].

*Jordan*, 591 F.Supp.2d at 707 (emphasis added). Thus, the Southern District of New York found that the Interstate Stalking Statute requires the Government to prove that a defendant acted "knowingly and with specific intention." *Id*. The defendant in *Jordan* was convicted of violating § 2261A based on evidence that he: (1) posted the victim's family's contact information on internet postings offering sex and housing; (2) threatened to beat up the victim's ex-boyfriend; (3) said angry and foolish things to the victim's family about the victim ending the relationship on a website defendant had created about the victim; and (4) harassed and made threats to the victim and her family members using their names, addresses, telephone numbers, and social security numbers. As discussed below, contrary to the Government's argument, Defendant's conduct in this case does not rise to the same level as that found to violate the Interstate Stalking Statute in *Jordan*.

The First Circuit's decision in *United States v. Tobin*, 480 F.3d 53 (1st Cir.

2007), is also instructive regarding the state of mind for the "intent to harass." Although *Tobin* did not involve the Interstate Stalking Statute, it interpreted the Telephone Harassment Statute, 47 U.S.C. § 223(a)(1)(D), which contains a similar "intent-to-harass" element.

In *Tobin*, the defendant was convicted of conspiring with two others to jam the telephone lines of the Democratic National Committee offices on election day. On appeal, the First Circuit reversed Tobin's conviction for telephone harassment based on overly broad jury instructions. The Court of Appeals noted that the "statute's language could be read to embrace both [a purpose to harass in the emotion-provoking sense, and knowledge that harassment will assuredly result from the repeated calls] and one starts with the presumption that knowledge is enough." *Id.* at 61. However, noting arguments for a contrary result, the First Circuit remanded to the district court to resolve the controlling legal issue of the state of mind required for "intent to harass." *Tobin*, 480 F.3d at 61.

On remand, the District Court of New Hampshire held that the evidence presented regarding Tobin's "intent to harass" was insufficient to support his conviction because it lacked proof that Tobin acted with a "specific purpose to cause emotional upset" in the person he called. The District Court further noted that "intent to harass" required proof that the actor "must have a specific purpose to cause emotional upset in a person at the telephone number called." *United States v. Tobin*, 545 F.Supp. 2d 189, 193 (D.N.H. 2008). Chief District Judge Steven J. McAuliffe clarified that:

> In other words, it is not enough merely to foresee that emotional upset is a likely consequence of repeated calls. Instead, the actor must purposely seek to cause, or must desire to cause an adverse emotional reaction in a person at the called number. That aim or purpose need not be the sole aim or purpose, but it must be an aim or purpose.

*Id.* The *Tobin* Court rejected the Government's argument, which is similar to the argument the Government advances here, that the Telephone Harassment Statute's "intent to harass" element did not require "purpose" but only "knowledge of probable consequen-

ces." *Id*. at 194. In rejecting that argument, the Court held that the statute required a showing that the defendant harbored a subjective purpose to cause an adverse emotional reaction in the person called, and because the evidence presented at trial was insufficient to make that showing, Tobin was entitled to a judgment of acquittal. *Id*. at 194.

The *Tobin* Court's interpretation of a similar "intent to harass" element contained in the Telephone Harassment Statute, 47 U.S.C. § 223(a)(1)(D), lends support to a finding that the Interstate Stalking Statute's "intent to harass" element requires proof that a defendant acted with "a specific purpose" to cause an adverse emotional reaction in the victim.

Based on the foregoing, the undersigned concludes that the "intent-to-harass" element of the Interstate Stalking Statute, 18 U.S.C. § 2261A, requires that a defendant act with the purpose to harass.

**III. Whether there is Probable Cause that Defendant acted with "Intent to Harass"**

For the reasons set forth below, the Court finds that the Government has failed to establish probable cause that Defendant acted with intent to harass L.B.

During the March 12, 2010 preliminary hearing, F.B.I. Special Agent Kevin Killigrew testified on direct examination as follows:

> Q: Did Mr. Infante explain to you why he went to Rochester?
>
> A: He went there because he wanted to explore the remote possibility of developing a relationship, a romantic relationship, with [L.B.]"

(docket # 22, Exh. 2 at 16)

On cross-examination, the following exchange occurred:

> Q: Now, when you interviewed him, did he not state that his intention was to, as you stated, try to get another chance at romance with her?
>
> A: Yes.
>
> Q: Did he ever state his intentions were to harass her?
>
> A: No.
>
> Q: Or that his intentions were to bother her?

| | |
|---|---|
| 1 | A: No. |
| 2 | Q: Or to panic her? |
| 3 | A: No. |

(docket # 22, Exh. 2 at 19)

The Government also presented evidence that Defendant traveled from Arizona to Rochester, New York unannounced. Defendant knew at that time that he had been rejected by L.B. (Tr. at 16) According to the Complaint's Affidavit, L.B. acknowledged that early-on in their relationship at A.S.U., she had coffee with the Defendant and thereafter told him "she was not interested in communicating with [him] any longer" and "on several occasions to leave her alone and to stop bothering her." (docket # 1 at 4-5) Defendant told law enforcement that he traveled to Rochester to try to locate L.B., Tr. at 13; that he went to the University of Rochester looking for L.B.; and that he spoke with a Russian professor to try to get information about L.B. (Tr. 13-14)

Special Agent Killigrew testified that on one occasion when Defendant was in the library at the University of Rochester, he saw a woman that appeared to be L.B. However, he never looked at her to make eye contact, and never got close enough to identify her. (docket # 22, Exh. 2 at 14) No evidence was presented at the preliminary hearing that L.B. saw or spoke directly to Defendant while he was in New York. Evidence was also presented that Defendant ordered flowers for L.B. and that he left a book and a teddy bear at the flower shop to accompany the flowers. The flower shop, however, did not deliver flowers because the flower shop requires recipients to pick up their flowers. L.B. declined the flowers. (docket # 27 at 2; citing probable cause affidavit)

The Government also presented evidence regarding several e-mails Defendant sent L.B. In one e-mail to L.B., Defendant acknowledged that L.B. told him to "get lost." (*Id.* at 5) Defendant's e-mail stated that he could not live with just a "platonic love" because he had a "powerful longing" for L.B. (*Id.*) In a text message sent to L.B., Defendant wrote "please forgive me for being such a jerk, a masochist and

- 9 -

even a criminal all this time" and asked L.B. to "forgive all [his] sins, especially for showing up at Rochester unannounced." (*Id*. at 5-6)

In its Response, the Government argues that the foregoing actions are similar to those deemed "calculated and elaborate" in *Jordan*, 591 F.Supp.2d at 708. In *Jordan*, defendant (1) posted the victim's family's contact information on internet postings offering sex and housing; (2) threatened to beat up the victim's ex-boyfriend; (3) said angry and foolish things to the victim's family about the victim ending the relationship on a website defendant had created about the victim; and (4) harassed and made threats to the victim and her family members using their names, addresses, telephone numbers, and social security numbers. *Id*.

Here, Defendant did not engage in such calculated behavior. Rather, he traveled to Rochester in an attempt to locate L.B. in the misguided hope to renew their relationship. Defendant did try to obtain information about L.B.'s whereabouts but that behavior is consistent with his efforts to contact her to profess his continued interest in a romantic relationship. Additionally, Defendant's efforts to give L.B. flowers, a book, and a teddy bear were not "calculated and elaborate." The flowers and other items were left at the flower shop for L.B. to pick up. L.B. declined the flowers.

Additionally, none of the evidence presented indicates that Defendant made any threatening statements or took any threatening actions toward L.B. Rather, the evidence shows that he was apologetic about his behavior in traveling to Rochester. Likewise, there is no evidence of any insulting, demeaning or humiliating language or conduct. Additionally, when Defendant thought he saw L.B. on campus in the library, he did not try to approach her or even make eye contact with her to determine for certain whether the woman he saw was L.B. Finally, Defendant's e-mails do not include any threatening language. He professes his affection for L.B. and asks for her forgiveness.

In support of its argument that Defendant intended to harass L.B., the Government cites *Tobin*, 545 F.Supp.2d 189. The Government, however, fails to acknowledge that *Tobin* found that the Interstate Stalking Statute requires proof that a

defendant have a subjective purpose to harass. As discussed above, there is no evidence establishing probable cause that Defendant had a purpose of harassing L.B. when he traveled to Rochester.

The Government also cites *United States v. Bell*, 303 F.3d 1187 (9th Cir. 2002) in support of its argument that circumstantial evidence shows that Defendant's purpose in traveling to Rochester was to harass L.B. The Government also relies on *Bell* for its argument that the Interstate Stalking Statute does not require subjective intent.

Contrary to the Government's argument, the jury instructions in *Bell* support a finding that the Interstate Stalking Statute requires that a defendant act with "intent and purpose" to harass. *Bell*, 303 F.3d at 1191. In *Bell*, the Ninth Circuit rejected the defendant's argument that the court should have provided a "further definition of the particular statutory intent - for example . . . using the words '*knowingly acted* with intent and purpose' instead of 'with the intent and purpose' as the instruction read." *Id*.

The Ninth Circuit found that the district court gave the Model Instruction which "properly reflect[ed] the intent requirements of the charged offense, Interstate Stalking in violation of 18 U.S.C. § 2261A. The Court explained that giving "a specific intent instruction might have confused the jury into believing that [the defendant] must have intended to violate a specific law rather than committing an act with the intent to harass a particular given government agent." *Id*. Although *Bell* concerned the jury instructions, its approval of the instruction that required "intent and purpose" supports a finding that the Interstate Stalking Statute requires that Government to prove beyond a reasonable doubt at trial that a defendant traveled with the "intent and purpose" to harass.

Again, Defendant's alleged conduct does not compare to that of the defendant in *Bell*. In *Bell*, the defendant had a long-running dispute with the Internal Revenue Service ("IRS"). He had previously served an 11-month sentence for Obstructing the Administration of Internal Revenue Laws, and using false social security numbers for posting the home addresses of IRS employees, accompanied by veiled threats, on the internet. *Bell*, 303 F.3d at 1189. While on supervised release, Bell traveled to several

different states and trespassed onto property formerly owned by an A.T.F. special agent (believing it was the special agent's current address). He then traveled to what he thought was the residence of an IRS agent. He stole mail from the mailbox, which included an item identifying the agent's son. *Id*. Later that day, he posted an e-mail online threatening the agent's son, and sent a threatening fax to that Special Agent. *Id.* This defendant admitted having visited the homes of several government agents. *Id*.

Unlike the conduct in *Bell*, Defendant's alleged acts here show that he was trying to get a second romantic chance with L.B. and earn her forgiveness. Although he did travel to Rochester to locate L.B. to "woo" her back, he never sent her any threatening messages before or after his travels, did not try to contact her in person on the one occasion he thought he saw her on campus. Defendant simply tried to send her flowers and small gifts, typical gestures of affection, that were left for L.B. at a flower shop for her to pick up. No evidence was presented at the preliminary hearing that after he returned from Rochester to Arizona, Defendant had any further direct or indirect contact with L.B.

**IV. Conclusion**

From the express language used by Congress in adopting 18 U.S.C. § 2261 A, the issue is not whether the Government presented sufficient evidence that a reasonable person would find Defendant's conduct constituted harassment of L.B.; rather, the issue is whether the Government presented sufficient evidence to show that Defendant's conduct was done with "the intent and purpose" to harass L.B. The Court finds that "a person of ordinary prudence and caution [would not] conscientiously entertain a reasonable belief" that Defendant's travel and conduct in Rochester, New York was with "the intent and purpose" to harass L.B. *Coleman*, 477 F.2d at 1202.

In conclusion, the Complaint should be dismissed pursuant to Rule 5.1(f), FED.R.CRIM.P., because the Government has failed to establish probable cause exists that Defendant had the requisite intent to harass, a necessary element to the federal Interstate Stalking Statute, 18 U.S.C. 2261A.

Accordingly,

**IT IS ORDERED** that Defendant's Request for Dismissal of Complaint, Discharge of Defendant, docket # 22, is **GRANTED**.

**IT IS FURTHER ORDERED** that the Criminal Complaint is **DISMISSED** without prejudice and hereby vacating Defendant's conditions of release. The Clerk is directed to terminate this case.

Dated this 30th day of March, 2010.

_Lawrence O. Anderson_
Lawrence O. Anderson
United States Magistrate Judge